UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| TRUCK CITY OF GARY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.  2:16-cv-348 |
| | ) | |
| vs. | ) | |
| | ) | |
| DAIMLER TRUCKS NORTH AMERICA LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

**TRUCK CITY OF GARY, INC.'S COMPLAINT
AND DEMAND FOR JURY TRIAL**

Truck City of Gary, Inc. ("Truck City"), for its Complaint against Daimler Trucks North America LLC ("Daimler"), alleges and states:

**SUMMARY OF ACTION**

1.  Truck City is a Daimler franchise in the business of selling Freightliner and Western Star trucks, which Daimler manufactures.  It brings this action against Daimler to recover the damages it suffered due to Daimler's price discrimination, wrongful constructive termination, and to reform its Dealer Agreements, within which Daimler included provisions that are illegal under Indiana law.

2.  In 2015, Truck City and a competing Daimler dealer each submitted bids to sell fifty (50) trucks to the Indiana Department of Transportation ("INDOT") (the "INDOT Bid"). Truck City invested significant time and resources in developing its relationship with INDOT and preparing a competitive bid.  Truck City, all things considered, would have won the INDOT Bid if its pricing had been competitive with that of the other Daimler dealer.

3. Daimler has a policy of offering its dealers the same pricing for trucks when they are competing for the same transaction. Daimler's policy is consistent with federal and Indiana law, both of which prohibit price discrimination between dealers.

4. Daimler thwarted Truck City's effort to win INDOT's business by offering a substantially better price to the competing dealer, which won the bid. Daimler admitted after the fact that it had done so. On information and belief, Daimler has engaged in a pattern of price discrimination against Truck City in an effort to undermine Truck City's performance and prompt a sale of the franchise.

5. Truck City has suffered, and continues to suffer, damages on account of Daimler's price discrimination.

**PARTIES**

6. Truck City is an Indiana corporation with its principal place of business in Gary, Indiana.

7. On information and belief, Defendant Daimler is a Delaware limited liability company with a principal place of business in Portland, Oregon.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction under 15 U.S.C. § 15 and 28 U.S.C. § 1331. The Court also has jurisdiction over Truck City's state law claim under 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. Moreover, even if the Court did not have diversity jurisdiction over the state law claims, it would nevertheless have supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

9. Venue is proper under 15 U.S.C. § 22 because Daimler transacts business in this District.  Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## FACTS

*Daimler Discriminates Against Truck City*

10. Trucks are typically sold through a competitive process whereby the customer invites bids or price quotations from multiple dealers, some of which may sell the same brand of truck.  In this process, dealers rely on original equipment manufacturers like Daimler to provide concessions off of their standard list price for trucks.  On information and belief, where multiple Daimler dealers are competing on the same transaction, Daimler's policy requires it to equalize the pricing offered to the competing dealers so that they are on a level playing field.  This policy is standard in the industry.

11. Truck City is a Daimler franchise operating in Gary, Indiana.  It sells Freightliner trucks, which Daimler manufactures.

12. Daimler's strategic plan calls for the consolidation of its dealer network.  Pursuant to that plan, Daimler has targeted dealers owning one dealership ("Single Rooftop Dealers") for elimination from the Daimler dealer network.

13. Through this process, on information and belief, Daimler has considerably reduced the number of Single Rooftop Dealers.

14. Truck City is a Single Rooftop Dealer.  Truck City is one of the Single Rooftop Dealers Daimler targeted for elimination pursuant to its strategic plan.  Daimler has explicitly threatened Truck City's dealer principal that if she does not sell the dealership, Daimler will run

her out of business. One of the ways Daimler has targeted Truck City is by discriminating against it in pricing.

15. Throughout the course of its business relationship with Daimler, Truck City has bought Freightliner trucks from Daimler and sold those trucks to customers. It has purchased both custom-order trucks that are part of the competitive process described above and stock trucks to hold in inventory.

16. INDOT is a large purchaser of heavy duty trucks. It typically works with dealers over a significant period of time to develop its specifications for trucks prior to its bid process. In years past, INDOT has offered more than one round of bidding where initial bids were close enough to warrant further competition. INDOT's historical practice has been to purchase not only the initial trucks that were the subject of the bid, but additional trucks from the winning bidder during the course of the bid year. INDOT also has significant service needs, as it heavily uses its trucks within the state. Accordingly, the sale of trucks to INDOT generates significant service revenue for the winning bidder.

17. Truck City historically had a strong relationship with INDOT. It won part of the bid to sell INDOT trucks in 2014 and had performed service for INDOT for years leading up to the 2015 INDOT Bid.

18. In anticipation of the INDOT Bid in 2015, Truck City devoted a full-time sales person to working on the specification, building the relationship with INDOT, and preparing the bid documentation. Truck City asked for pricing from Daimler in connection with the INDOT Bid and relied on that pricing to prepare its bid.

19. Stoops Freightliner, another Daimler dealer based in Indianapolis, Indiana, but having multiple Daimler dealerships, bid on the same INDOT transaction. Like Truck City, Stoops Freightliner sought and received pricing from Daimler in connection with its bid.

20. The pricing Daimler provided Stoops Freightliner in connection with the INDOT Bid was significantly better than the pricing Daimler provided to Truck City.

21. Given Daimler's significantly more favorable pricing, Stoops Freightliner was able to win the INDOT Bid in the first round. Its pricing was so much lower than the other bidders that INDOT elected to forgo the negotiated portion of the bid process.

22. Daimler conceded to Truck City that it had provided Stoops Freightliner more favorable pricing on the INDOT Bid and had not followed its policy of equalizing concessions between dealers bidding on the same transaction.

23. As a result of Daimler's price discrimination, Truck City suffered damages including, but not limited to, loss of profit on the sale of the trucks, loss of service revenue, loss of the opportunity to sell additional trucks to INDOT, and the loss of its salesperson's time in developing the bid.

24. On information and belief, the INDOT Bid is not the only circumstance where Daimler failed to equalize Truck City's pricing with another Daimler dealer bidding on the same transaction or a similar transaction. Daimler is aware of at least one other instance in or around January 2015 where it believes Daimler's failure to equalize concessions cost it a multi-truck sale and associated service revenue.

25. Daimler's failure to follow its policy in connection with the INDOT Bid and the January 2015 bid creates a reasonable belief that Daimler has failed to follow its policy in

5

connection with other transactions, particularly given Daimler's focus on eliminating Single Rooftop Dealers.

26. Daimler's price discrimination not only directly injured Truck City, it injured INDOT and competition for the INDOT Bid more generally. Daimler's conduct raised prices to INDOT and deprived it of the opportunity to select its preferred Freightliner dealer, all else being equal. Truck City's final bid to INDOT would likely have been lower than Stoops Freightliner's given equal pricing. At a minimum, Daimler's price discrimination left INDOT with only a competitive bid from Stoops Freightliner rather than two competitive bids from which it could select its preferred dealer or conduct a second round of bidding to maximize competition.

27. Daimler has made good on its promise to run Truck City out of business. Daimler's discriminatory pricing and repeated threats have constructively terminated Truck City's dealership and forced its dealer principal to sell a business that has been in her family for generations.

***Daimler Requires Truck City to Agree to Dealer Agreements Containing Provisions that Violate Indiana's Franchise Laws***

28. Truck City has been a Freightliner and Western Star dealer for many years. On July 17, 2014, Truck City and Daimler executed Daimler's standard Freightliner Dealer Sales and Service Agreement (the "Freightliner Agreement"), which renewed Truck City's right to sell Freightliner trucks. The parties also executed Daimler's standard Western Star Trucks Dealer Sales and Service Agreement (the "Western Star Agreement") (together, the Freightliner Agreement and the Western Star Agreement will be referred to as the "Dealer Agreements").

29. The Dealer Agreements purport to include Daimler's "Standard Provisions" and "Dealer Manual." Collectively, these documents contain numerous provisions that are prohibited by Indiana franchise laws, including but not limited to:

6

    a. Provisions that could be construed as requiring Truck City to prospectively assent to a release, assignment, novation, waiver, or estoppel purporting to relieve Daimler from liability to be imposed by the Indiana Deceptive Franchise Practices Act (*e.g.*, Sections IX.E, XVII, XVIII of the Standard Provisions; Section XIII of the Terms of Sale Bulletin; Section 10 of the Systems Access Agreement);

    b. Provisions that limit litigation brought for breach of the Dealer Agreements, including a waiver of the right to trial by jury (*e.g.*, Sections XV.K, XVII of the Standard Provisions; Section XIII of the Terms of Sale Bulletin; Section 10 of the Systems Access Agreement);

    c. Provisions that may permit Daimler to substantially modify the Dealer Agreements without Truck City's written consent (*e.g.*, Section I(D) of the Dealer Agreements; Section IX(A) of the Standard Provisions; Section 6 of the Dealer Manual);

    d. Provisions that permit Daimler to compete unfairly with Truck City within a reasonable area (*e.g.*, Section I of the Dealer Agreements);

    e. Provisions that may require Truck City to participate in advertising campaigns or contests, promotional campaigns, promotional materials and/or display decorations or materials at an expense to Truck City that is indeterminate, determined by a third party, or determined by a formula (*e.g.*, Sections X, XII of the Standard Provisions);

  f. Provisions that may permit unilateral termination of the franchise without good cause or in bad faith (*e.g.*, Sections XV.C, XV.F of the Standard Provisions); and

  g. Provisions allowing for an increase in prices of goods provided by Daimler which Truck City had ordered for private retail consumers prior to Truck City's receipt of an official price increase notification (*e.g.*, Section III of Terms of Sale Bulletin).

All of these offending provisions are subject to reformation under Indiana law, and Truck City is not bound by them.

## COUNT I
## VIOLATION OF THE ROBINSON PATMAN ACT (15 U.S.C. § 13(a))

Truck City, for Count I of its Complaint against Daimler, alleges and states:

30. Truck City incorporates Paragraphs 1 through 29 as if fully set forth herein.

31. Daimler's sales to Truck City and the other dealers at issue occurred in interstate commerce.  Daimler is based in Portland, Oregon, and both Truck City and Stoops Freightliner are based in Indiana.  Accordingly, the sales took place across state lines.

32. The trucks at issue in the INDOT Bid were of like grade and quality – indeed, they were of identical grade and quality given that the trucks had to match INDOT's specifications.  On information and belief, the trucks in the January 2015 bid and others were likewise of like grade and quality.

33. Daimler discriminated between Truck City and Stoops Freightliner in connection with the INDOT Bid.  It also discriminated between Truck City and another Daimler dealer in connection with the January 2015 bid and in other transactions.

34. The effect of Daimler's discrimination was to injure, destroy, and prevent competition to the advantage of Stoops Freightliner and its other dealers who received the more favorable pricing in connection with the January 2015 bid and other transactions. Daimler's discrimination harmed competition for the transactions at issue, the customers seeking bids, and Truck City.

35. Under 15 U.S.C. § 15, Truck City is entitled to recover treble damages, the cost of suit, including a reasonable attorney's fee, and simple interest on the actual damages it has suffered for the period beginning on the date of service setting forth this claim.

36. Under 15 U.S.C. § 26, Truck City is entitled to injunctive relief prohibiting Daimler from continuing to discriminate against it.

WHEREFORE, Truck City respectfully requests that the Court enter judgment in its favor on Count I; grant Truck City an injunction prohibiting Daimler from engaging in further price discrimination; award Truck City (1) treble damages in an amount to be determined at trial, (2) the cost of suit, including a reasonable attorney's fee, and (3) pre- and post-judgment interest; and enter all other just and proper relief.

## COUNT II
## DECEPTIVE FRANCHISE PRACTICES UNDER IND. CODE § 23-2-2.7-2

Truck City, for Count II of its Complaint against Daimler, alleges and states:

37. Truck City incorporates Paragraphs 1 through 36 as if fully set forth herein.

38. Truck City is a franchise within the meaning of Ind. Code § 23-2-2.7-5 because:

   a. The Dealer Agreements are contracts that grant Truck City the right to engage in the business of selling trucks and truck service under a marketing plan and system prescribed in substantial part by Daimler; and

9

      b.      The operation of Truck City's business pursuant to such a plan is substantially associated with Daimler, Freightliner, and Western Star's trademark, service mark, trade name, logotype, and advertising designating the franchisor or its affiliate.

39. Daimler's conduct violated Ind. Code § 23-2-2.7-2(5) because Daimler discriminated against Truck City by providing it less favorable pricing than other Daimler dealers under substantially similar circumstances, including similar sales and marketing conditions.

40. Truck City is entitled to recover damages for Daimler's violation of the Deceptive Franchise Practices Act.

WHEREFORE, Truck City respectfully requests that the Court enter judgment in its favor on Count II, award damages in an amount to be determined at trial, award pre- and postjudgment interest, and enter all other just and proper relief.

## COUNT III
## DECEPTIVE FRANCHISE PRACTICES UNDER IND. CODE § 23-2-2.7-1

Truck City, for Count III of its Complaint against Daimler, alleges and states:

41. Truck City incorporates Paragraphs 1 through 40 as if fully set forth herein.

42. Truck City is a franchise within the meaning of Ind. Code § 23-2-2.7-5 because:

      a.      The Freightliner Agreement is a contract that grants Truck City the right to engage in the business of selling trucks and truck service under a marketing plan and system prescribed in substantial part by Daimler; and

      b.      The operation of Truck City's business pursuant to such a plan is substantially associated with Daimler and Freightliner's trademark, service

mark, trade name, logotype, and advertising designating the franchisor or its affiliate.

43. Daimler's conduct violated Ind. Code § 23-2-2.7-1 by including multiple provisions that are and/or could be illegal under the Deceptive Franchise Practices Act, including but not limited to those set forth in paragraph 29.

44. Daimler also violated Ind. Code § 23-2-2.7-1 by attempting to terminate and constructively terminating Truck City's franchise without good cause and in bad faith.

45. Truck City is entitled to reformation of the Freightliner Agreement and damages.

WHEREFORE, Truck City respectfully requests that the Court enter judgment in its favor on Count III, order that the offending provisions of the Freightliner Agreement be reformed to comply with Indiana law, award damages in an amount to be determined at trial, award pre- and postjudgment interest, and enter all other just and proper relief.

## COUNT IV
## DECEPTIVE FRANCHISE PRACTICES UNDER IND. CODE § 23-2-2.7-1

Truck City, for Count IV of its Complaint against Daimler, alleges and states:

46. Truck City incorporates Paragraphs 1 through 45 as if fully set forth herein.

47. Truck City is a franchise within the meaning of Ind. Code § 23-2-2.7-5 because:

   c. The Western Star Agreement is a contract that grants Truck City the right to engage in the business of selling trucks and truck service under a marketing plan and system prescribed in substantial part by Daimler; and

   d. The operation of Truck City's business pursuant to such a plan is substantially associated with Daimler and Western Star's trademark, service mark, trade name, logotype, and advertising designating the franchisor or its affiliate.

11

48. Daimler's conduct violated Ind. Code § 23-2-2.7-1 by including multiple provisions that are or could be illegal under the Deceptive Franchise Practices Act, including but not limited to those set forth in paragraph 29.

49. Daimler also violated Ind. Code § 23-2-2.7-1 by attempting to terminate and constructively terminating Truck City's franchise without good cause and in bad faith.

50. Truck City is entitled to reformation of the Western Star Agreement and damages.

WHEREFORE, Truck City respectfully requests that the Court enter judgment in its favor on Count IV, order that the offending provisions of the Dealer Agreements be reformed to comply with Indiana law, award damages in an amount to be determined at trial, award pre- and postjudgment interest, and enter all other just and proper relief.

## COUNT V
## AUTOMOBILE DEALERS DAY IN COURT ACT

Truck City, for Count V of its Complaint against Daimler, alleges and states:

51. Truck City incorporates Paragraphs 1 through 50 as if fully set forth herein.

52. The Automobile Dealers Day in Court Act, 15 U.S.C. § 1222, authorizes an automobile dealer to "bring suit against any automobile manufacturer engaged in commerce" and to "recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer … to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer[.]"

53. Truck City is an "automobile dealer" within the meaning of the Act because it is a corporation operating under the terms of a written franchise agreement and is engaged in the sale of trucks.

54. Daimler is an "automobile manufacturer engaged in commerce" because it is a business enterprise engaged in the manufacturing and assembling of trucks, and it sells trucks in interstate commerce across state lines.

55. Daimler failed to act in good faith in "performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer" because it failed to act in a fair and equitable manner toward Truck City and engaged in coercion, intimidation, and threats of coercion and intimidation.

56. Specifically, Daimler improperly threatened to terminate Truck City if its dealer principal refused to sell the franchise. Daimler also failed to act in a fair and equitable manner by failing to support Truck City equally in large corporate transactions as part of an effort to prevent Truck City from selling a large number of trucks so that Daimler could attempt to terminate Truck City for alleged performance issues.

WHEREFORE, Truck City respectfully requests that the Court enter judgment in its favor on Count V, award damages in an amount to be determined at trial, award the cost fo suit, and enter all other just and proper relief.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

*/s/ Robert D. MacGill*_____
Robert D. MacGill (#9989-49)
Jessica M. Lindemann (#31058-49)
Justin D. Rumer (#31494-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
E-mail:       rmacgill@btlaw.com
                   jlindemann@btlaw.com
                   jrumer@btlaw.com

*Attorneys for Truck City of Gary, Inc.*